FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

May 27, 2025

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| ROB ERVIN, an individual; and THE STERLING ORGANIZATION L.L.C., a Washington limited liability company,<br><br>      Plaintiffs,<br><br>v.<br><br>CALIFORNIA NETWORK MANAGEMENT, INC., a California corporation d/b/a CNM WIRELESS, LLC, a California limited liability company; and STEVEN BITTER, individually and on behalf of his marital community,<br><br>      Defendants. | NO. 2:25-CV-0011-TOR<br><br>ORDER DENYING DEFENDANTS' MOTION TO DISMISS OR TRANSFER VENUE |

  BEFORE THE COURT is Defendants' Motion to Dismiss or Transfer Venue (ECF No. 5). This matter was submitted for consideration without oral argument. The Court has reviewed the record and files herein and is fully informed. For the reasons discussed below, Defendants' Motion to Dismiss or Transfer Venue (ECF No. 5) is DENIED.

ORDER DENYING DEFENDANTS' MOTION TO DISMISS OR TRANSFER VENUE ~ 1

## BACKGROUND

This matter arises out of the dissolution of a business relationship and contractual agreements therein. Around 2006, Plaintiff Rob Ervin, at all times a resident of Spokane, Washington, was working at AT&T, developing the company's non-stock program to allow customers to obtain wireless products that were not ordinarily kept in stock. ECF No. 9 at 2. While working in this capacity, he met Defendant Steven Bitter, a California resident, who managed CNM Wireless ("CNM"). *Id*. at 2–3. CNM Wireless was a California limited liability company, and its affiliate, California Network Management Inc., was a California corporation with a principal place of business in California. ECF No. 5 at 2. With Ervin's support, AT&T selected CNM to operate its non-stock program, and Bitter contacted a California-based software developer to assist the business in integrating into the AT&T billing system. ECF No. 5 at 4. Bitter was the only signatory to the contract with AT&T and the later amendments. ECF No. 6 at 2. Ervin joined CNM as it integrated with AT&T, and he continued to work from Spokane. ECF No. 9 at 3.

As the business relationship grew, Ervin and Bitter entered into a series of agreements to establish the terms of their operation together. In 2007, they executed a Letter Agreement, whereby Ervin was named the Executive Vice President of CNM, an office for CNM was established in Washington, and Ervin

was given equity in the company. *Id*. When Ervin left AT&T for Motorola, Ervin and Bitter purportedly executed two agreements for their relationship moving forward: the Term Sheet and the Final Agreement.[1] The Term Sheet, signed in 2010 at a location outside of the Eastern District of Washington, provided that Bitter would continue to be the sole shareholder of CNM, but that Bitter and Ervin would each own 50% of World Network Communications, Inc., which would provide consulting services for the other businesses in Bitter's orbit. ECF No. 6-1 at 2. The Term Sheet gave Ervin the title of Executive Vice President of Sales and Marketing for World Network Communication, and an "executive level job title" with CNM. *Id*. The Final Agreement was purportedly signed in 2013 and memorialized the parties' shared goal of positioning CNM for sale. ECF No. 10 at 4. The Final Agreement also allegedly establishes that Bitter was to be in charge of the legal and bookkeeping aspect of the business, while Ervin was to be in charge of sales and business development portion, through his consulting business,

---

[1] At some point during this period of his business relationship with Bitter, Ervin left Motorola to join CNM full time, although it isn't clear from the documents currently before the Court which agreement memorializes or marks this change. The Court assumes this occurred sometime after January 2011. See ECF No. 1 at 6–7 ¶ 3.17.

ORDER DENYING DEFENDANTS' MOTION TO DISMISS OR TRANSFER VENUE ~ 3

Plaintiff Sterling Corporation.  ECF No. 9 at 4.

The parties fundamentally disagree as to where CNM was primarily operated.  Plaintiffs argue that all communication with AT&T in an effort to run and develop the business were handled through the Spokane office, and that the California office was primarily used for storage.  *Id*.  Further, Ervin alleges that while working in the Spokane office, he developed and managed an online sales portal for AT&T, which provided representatives and customers 24/7 access to products.  *Id*. at 5.  Throughout its existence, the Spokane office has allegedly employed thirty-five different people, and was the location where CNM's invoices to AT&T were submitted.  ECF No. 10 at 6.  Defendants argue that, at all times throughout the business relationship, Bitter was the sole owner of CNM, which was operated in Westlake Village, California.  ECF No. 5 at 4.  Between 2013 and 2023, CNM, Inc. maintained fifteen to twenty-five employees at the Westlake Village Office.  *Id*.  Cellular devices were stored, configured, activated, and shipped from the California office.  Moreover, they argue that Ervin and his company the Sterling Organization served as consultants for CNM, but were not employed or managed by CNM.  *Id*. a 5.

The parties also disagree as to the disposition of the business.  Plaintiffs opine that CNM was thriving, doubling sales in 2021.  ECF No. 9 at 5.  Ervine felt that AT&T would likely be interested in absorbing CNM, but if not, the proximity

ORDER DENYING DEFENDANTS' MOTION TO DISMISS OR TRANSFER VENUE ~ 4

to the company would be enticing to other entities. *Id*. In Plaintiffs' retelling, Bitter inexplicably decided he no longer wanted to sell CNM in the spring of 2023, and remarked on more than one occasion that he did not want to grant access to CNM's books and records. *Id*. at 6 . He sent a termination letter to AT&T on May 1, 2023, over Ervin's protests. *Id*. Though AT&T was upset, and Ervin received offers from other entities looking to purchase the business, Bitter dissolved the operation. *Id*. at 7. In Defendants' version of events, the business began slowing down as AT&T integrated aspects of CNM in-house and was increasingly slow in processing invoices. ECF No. 5 at 5. Defendants state that Ervin and Bitter began discussions of closing the business in April 2022, and that in July of that year, Ervin expressed a desire to end operation. *Id*. In May 2022, Ervin set up a meeting with Bitter and a representative from AT&T, who expressed disinterest in acquiring CNM. *Id*. at 6. A year later, Bitter sent a letter to AT&T, expressing an intent to terminate the agreements CNM held with the company. *Id*. AT&T in turn informed Bitter that it had control over whether to allow CNM to assign its agreements to a subsequent owner of the business. *Id*. Defendants argue that even after learning of Defendant Bitter's intention to wind up the business, Ervin continued to solicit sales from other entities, but expressed flexibility with the prospect of sale. *Id*. In late 2023 and early 2024, Bitter dissolved the businesses with the California State Attorney General. *Id*. at 7.

ORDER DENYING DEFENDANTS' MOTION TO DISMISS OR TRANSFER VENUE ~ 5

Plaintiffs filed claims for breach of fiduciary duty, breach of contract, tortious interference with business expectancy, and unjust enrichment. ECF No. 1. Defendants argue that this Court should either dismiss or transfer this matter due to improper venue, or in the alternative, transfer the case to the more convenient venue in the Central District of California. ECF No. 5. Plaintiffs oppose the transfer, arguing that venue is proper in the Eastern District of Washington, and that this is the most convenient forum. ECF No. 9.

## DISCUSSION

### I. Venue Pursuant to Federal Rule of Civil Procedure 12(b)(3)

Defendants argue that this case should be dismissed for improper venue under Federal Rule of Civil Procedure 12(b)(3), or, in the alternative, transferred to the United States District Court for the Central District of California. Plaintiffs bring their claims pursuant to 28 U.S.C. § 1391(b)(2), which states that venue is proper in, "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred." Because venue is proper in any district in which the requirements of § 1391(b) are met, more than one district may be a proper venue. *See Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 842 (9th Cir. 1986); *see also Silver Valley Partners, LLC v. De Motte*, 400 F. Supp. 2d 1262, 1269 (W.D. Wash. 2005) ("The chosen venue need not be the best venue, only a qualifying venue."). Plaintiff bears the burden of proving that venue is

proper in the district in which the suit was initiated. *Piedmont Label Co. v. Sun Garden Packing Co.*, 598 F.2d 491, 496 (9th Cir. 1979). The Court draws all reasonable inferences and resolves all factual disputes in favor of the non-moving party. *Murphy v. Schneider Nat'l, Inc.*, 362 F.3d 1133, 1138 (9th Cir. 2004).

In the Complaint, Plaintiffs argue that venue is proper in the Eastern District of Washington because the conduct giving rise to this case took place primarily in this judicial district. ECF No. 9 at 9. Specifically, Plaintiffs present that the contract the parties entered into was intended to be carried out in Spokane. *Id*. at 11. And Plaintiff argues that venue is also proper for the remaining tort claims because the harm caused by Defendants was directed at and felt in the Eastern District of Washington. *Id*. at 13.

A. Contract Claim

For the purposes of venue, the Ninth Circuit has established that a contract related claim arises in the "place of intended performance." *Decker Coal*, 805 F.2d at 842. Thus, the Court is tasked with determining where the contract was intended to be performed. *Decker Coal* is helpful, but not entirely analogous to the facts of this case. There, the plaintiff entered into a contract whereby it would supply coal from its Montana mines for the defendant's Illinois power plant. 805 F.2d at 837. When the plaintiff filed suit for breach of contract, the defendant argued that venue in Montana was improper and sought a transfer to the Northern

1  District of Illinois. *Id*. at 837–38. However, the Ninth Circuit found that Montana

2  was a proper place of venue under §1391(b)(2) as it was the location of the mine

3  that was the basis of the agreement, and therefore "the place of intended

4  performance."

5  Unlike in *Decker Coal*, which categorically found that venue was proper in

6  Montana, it appears that venue with respect to Plaintiff's contract claim is proper

7  both in the Eastern District of Washington and the Central District of California.

8  While it is arguable that much of CNM's actual business took place in the Central

9  District of California, Washington was contemplated as Ervin's homebase for at

10 least one potential agreement on the record and was the noted location where he

11 worked.[2] ECF No. 6 at 5, ¶ 16; ECF No. 16-1. Moreover, the final operative

---

[2] Defendants also argue that Federal Rule of Civil Procedure 11 Sanctions are appropriate because Plaintiffs submitted a declaration which inaccurately reflected that an October 2007 agreement was signed, when in reality it was not. See ECF No. 14 at 6. In order to seek sanctions under Rule 11, a party must serve a motion for sanctions under Rule 5 that specifically describes the conduct that is alleged to violate Rule 11(b). Fed. R. Civ. P. 11(c)(2). The opposing party then has 21 days to withdraw or appropriately correct the pleading before the motion for sanctions can be filed with or presented to the Court. *Id*. Referred to as the "safe harbor"

agreement listed Ervin as "Executive Vice President of Sales and Marketing." ECF No. 6-1 at 2.  Moreover, both in the Complaint and in the Response to the motion currently before the Court, Plaintiffs argue that the AT&T Speed portal was developed and operated, at least in part, out of the Spokane, Washington office. ECF No. 1 at 8, ¶ 3.24; ECF No. 9 at 5; ECF No. 21 at 3–5, ¶¶ 2–5.  And Plaintiffs contend that all marketing and sales operations for CNM were handled in Spokane, by a team that worked in a physical office space.  ECF No. 9 at 4; ECF No. 10-3 at

---

provision, the purpose of this subsection "is to give the offending party the opportunity, within 21 days after service of the motion for sanctions, to withdraw the offending pleading and thereby escape sanctions." *Barber v. Miller*, 146 F.3d 707, 710 (9th Cir. 1998).  Plaintiffs clarified that Ervin submitted the October 2007 agreement as he maintained it in his records, and argues that regardless, the document is not material as the working relationship between parties was further defined by later agreements.  ECF No. 21 at 6–7.  The Court will not assume that the document was signed, and will disregard the signature page as related to the attached document.  *See* ECF No. 20 at 5 ("In all, Mr. Ervin submitted what turned out to be an incorrect signature page, but in doing so, he did not manufacture or falsify any records.").  At this juncture, the Court does find this conduct sanctionable.

ORDER DENYING DEFENDANTS' MOTION TO DISMISS OR TRANSFER VENUE ~ 9

2–3. Though the actions undertaken by Ervin ultimately benefited the California location, it was expected at the time of Bitter's decision to wind up the business that Ervin was to perform the work for CNM in Washington State. ECF No. 9 at 6–7.

B. *Tort Claims*

The Ninth Circuit has ruled that when determining where a substantial part of the events or omissions giving rise to the claim occurred "in a tort action, the locus of the injury [is] a relevant factor." *Myers v. Bennett L. Offices*, 238 F.3d 1068, 1076 (9th Cir. 2001). Once again, the Court finds venue to be proper either in the Eastern District of Washington or in the Central District of California. This matter is similar to *Meyers v. DCT Technologies, Inc.*, 11-CV-05595 RBL, 2012 WL 1416264, at *2 (W.D. Wash. Apr. 24, 2012), in which a plaintiff quit his job to join the defendant company full time, working remotely from Washington for the Wisconsin-based business. Though there was no requirement that he work from Washington for the purposes of performing his job, the plaintiff alleged that the defendant felt that his proximity to, "near world-class outdoor sporting events," would benefit the defendant business which produced a product that would record the position and movement of a person wearing it and transmit that data for display and distribution. *Id*. at *1. There, the court found that Washington was a proper venue with respect to plaintiff's tort claims because he relied on the representation

of defendant in agreeing to work for the business and suffered harm from its breach in Washington. *Id*. at *9. Here, the parties were aware that Ervin would be working in Washington and utilizing his consulting business to carry out work for CNM. Thus, the effects any alleged breach of fiduciary duty or tortious interference claims would be felt in the Eastern District of Washington. *See Silver Valley Partners*, LLC, 400 F. Supp. 2d at 1269. Venue is proper.

## II. Venue Transfer Under 28 U.S.C. § 1404(a)

Nevertheless, Defendants argue that this Court should exercise its discretion and transfer the matter to the Central District of California. Section 1404(a) provides for a discretionary transfer of a case to another judicial district "[f]or the convenience of parties and witnesses, in the interest of justice." The purpose of allowing transfer is to "prevent the waste of time, energy, and money, and to protect litigants, witnesses, and the public against unnecessary inconvenience and expense." *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964) (internal quotation marks omitted). The movant must establish (1) that the transferee court is one in which the action could have originally been brought and (2) that transfer is appropriate. *Hatch v. Reliance Ins. Co.*, 758 F.2d 409, 414 (9th Cir. 1985). A "defendant must make a strong showing of inconvenience to warrant upsetting the plaintiff's choice of forum." *Decker Coal*, 805 F.2d at 843.

It is undisputed that this case could have been brought in the Central District

ORDER DENYING DEFENDANTS' MOTION TO DISMISS OR TRANSFER VENUE ~ 11

Case 2:25-cv-00011-TOR    ECF No. 22    filed 05/27/25    PageID.389    Page 12 of 20

of California as all defendants reside in California, and this matter is currently before this Court on the basis of 28 U.S.C. § 1332 diversity jurisdiction. *See* 28 U.S.C. § 1391(b)(1); ECF No. 1 at 2–3, ¶¶ 1.3–1.5.

The second prong, whether transfer is appropriate, centers on the convenience to the parties, the witnesses, and the interest of justice portion of 28 U.S.C. § 1404(a). In analyzing the interest of justice, courts consider the additional following factors:

> (1) the place at which any agreements between the parties were negotiated and executed; (2) the state most familiar with the governing law; (3) the plaintiff's choice of forum; (4) the parties' respective contacts with the forum; (5) the contacts specific to the plaintiff's cause of action in the chosen forum; (6) the comparative costs of litigation in the two forums; (7) the availability of compulsory process to compel attendance of unwilling non-party witnesses; and (8) the ease of access to sources of proof

*Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498-99 (9th Cir. 2000).[3]

In addition, courts also consider various public interest factors, including: "the administrative difficulties flowing from court congestion; the local interest in having localized controversies decided at home; and the interest in having the trial

---

[3] *Jones* also notes that a forum selection clause and relevant state public policy be considered. 211 F.3d at 499. There is no notable forum selection clause in any of the agreements currently on the record.

ORDER DENYING DEFENDANTS' MOTION TO DISMISS OR TRANSFER VENUE ~ 12

of a diversity case in a forum that is at home with the law." *Atlantic Marine Const. Co., Inc. v. U.S. Dist. Court for the W. Dist. of Texas*, 571 U.S. 49, 62 n.6 (2013) (quotation marks and brackets omitted). The decision to transfer is ultimately a discretionary one, based upon an "individualized, case-by-case consideration of convenience and fairness." *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 30 (1988) (internal quotation omitted).

   A. *Convenience to the parties and witnesses*

  Both parties assert health concerns as reasons to maintain this litigation in their home states. ECF No. 7; ECF No. 10 at 17. Moreover, Defendant Bitter is recovering from the devastating California wildfires, and argues that venue is more convenient in the Central District of California while he continues to repair his smoke and heat damaged home. ECF No. 5 at 16. Ervin asserts that Bitter's health has never prevented him from traveling in the past. ECF No. 10 at 17, ¶ 47. Bitter asserts that Ervin frequently travelled to California for work, despite his purported health concerns. ECF No. 5 at 17. These arguments are essentially a wash, as it appears that both sides have considerable reasons this Court could rely on in maintaining the litigation in either Washington or transferring to California. Moreover, outside of the trial itself, it is unlikely that either party will be required to travel given the ability to communicate and exchange information via the internet.

Parties once again offer similar and compelling reasons to maintain this case in their respective home states as it relates to the convenience for witnesses. The convenience to non-party witnesses is regarded as a more important factor than the convenience to the party witnesses. *Saleh v. Titan Corp.*, 361 F. Supp. 2d 1152, 1160 (S.D. Cal. 2005). In making a convenience determination, the court should not merely consider the number of witnesses presented by either side, but instead, the materiality of the witnesses offered and whether the forum is convenient to them. *Gates Learjet Corp. v. Jensen*, 743 F.2d 1325, 1335–36 (9th Cir. 1984). Both parties offer specific individuals that they will likely rely on for testimony. Ervin offers that individuals in Spokane will opine on CNM as a company, and that buyers interested in acquiring CNM reside in Washington and will likely be material witnesses for this matter. ECF No. 9 at 16–18. Bitter argues that because CNM's finances were handled in California, the business was dissolved in California, and most of the documents that will be relevant to the dispute are housed in California, convenience to the witnesses favors transfer. He offers individuals who worked in the CNM warehouse, CNM's accountant, CNM's financial controller who assisted in the dissolution of the business, and the individuals who worked in the Westlake Village office as witnesses who will likely have relevant information and may testify at trial. ECF No. 5 at 18–19.

There are likely relevant witnesses in both locations. Given the substance of

the Plaintiffs' claims center around Defendant Bitter's desire to dissolve the business, the California witnesses could provide an on the ground perspective of the operation and the internal conversations surrounding the vitality of CNM in California.  Defendant Bitter made choices related to the business in California, and CNM's accountant and financial controller are seemingly critical to the adjudication to this matter.  However, the Court also recognizes the significance of the Washington witnesses, including those who were seeking to acquire the business, and those who may testify to their perception of CNM's health as they worked in Washington.  As such, the Court also finds that the convenience to the witnesses weighs neutrally.

  *B. The interest of justice*

  The first factor, where "the relevant agreements were negotiated and executed," favors California as a forum.  The parties agree that at least part of the various agreements entered into were negotiated in California.  ECF No. 9 at 20 and 14 at 9.

  The second factor, "the state which is most familiar with the governing law," favors Washington as a forum.  Plaintiffs currently bring their claims under Washington law.  ECF No. 9 at 20.  However, "[f]ederal courts are equally equipped to apply distant state laws when the law is not complex or unsettled," and neither party has shown that the application of Washington would require the

ORDER DENYING DEFENDANTS' MOTION TO DISMISS OR TRANSFER VENUE ~ 15

Central District of California to undertake a particularly novel or complex analysis. *T-Mobile USA, Inc. v. Selective Ins. Co. of America*, No. C15-1739JLR, 2016 WL 1464468 at *4 (W.D. Wash. Apr. 14, 2016).

The third factor looks to the Plaintiff's choice of forum. Under § 1404, "great weight is generally accorded [to the] plaintiff's choice of forum," unless "the operative facts have not occurred within the forum and the forum has no interest in the parties or subject matter." *Lou v. Belzberg*, 834 F.2d 730, 739 (9th Cir. 1987).

Plaintiff's preferred forum is Washington. Some of the agreements proffered contemplated that Ervin would conduct business for CNM in Washington, though the Court notes that the specifics around the agreement, including its signature, are disputed. *See* ECF Nos. 16-1 at 2. And Plaintiff offers that the wing of the business that was established in this forum was sizeable. ECF No. 10 at 5–6, ¶¶ 17–19; ECF No. 21 at 2, ¶ 3.

The fourth factor, which considers the parties' respective contacts with the forum, is neutral, as is discussed above. There is no information before the Court as to where specifically the agreements were signed. Defendants argue that Ervin would travel to California for work, and that Bitter had no managerial oversight into the Spokane operation. ECF No. 6 at 5, ¶¶ 16–17. Additionally, the flow and benefits reaped from the Spokane operation would directly impact the CNM operation in California, as Plaintiffs operated on a consultation basis. ECF No. 5 at

ORDER DENYING DEFENDANTS' MOTION TO DISMISS OR TRANSFER VENUE ~ 16

5. On the other hand, Plaintiff offers that the CNM office in Spokane was not only a physical structure (ECF No. 10-3), but that the business was thriving and maintained a staff. Therefore, it seems that either forum supports the fourth factor.

The fifth factor evaluates "the contacts relating to the plaintiff's cause of action in the chosen forum." This factor favors allowing litigation to proceed in California. Notwithstanding the information as detailed in factor four, the actual substance of Plaintiffs' claims flows from the decisions made in Westlake Village, California. If the claims are proven, Defendant Bitter breached his fiduciary duty, breached the parties' agreements, and interfered with Plaintiffs' business expectancy in California, based on his decision to end the contractual relationship with AT&T and wind up the various businesses rather than sell. ECF No. 5 at 6–7; ECF No. 6 at 6–9, ¶¶ 19–32. While Plaintiff may have felt the effects in Washington, the core of the claim is centered in California.

The parties did not brief in great detail the sixth factor, the issue of costs. At bottom, one side will be disadvantaged by the forum due to expended travel. However, the Court expects that much of the discovery of this matter will take place remotely. The scale tips slightly in favor of California, as Defendants represent that much of the physical documents dealing with CNM's finances exist there. ECF No. 5 at 19; ECF No. 6 at 10, ¶ 36. This finding also lends to factor eight, the ease of access to sources of proof. Though true that the "ease of access

ORDER DENYING DEFENDANTS' MOTION TO DISMISS OR
TRANSFER VENUE ~ 17

to documents does not weigh heavily in the transfer analysis, given that advances in technology have made it easy for documents to be transferred to different locations," if the bulk of Plaintiff's discovery exists in California, then factor eight also supports transfer. *Metz v. U.S. Life Ins. Co. in City of New York*, 674 F. Supp. 2d 1141, 1149 (C.D. Cal. 2009); *see also* ECF No. 6 at 10, ¶ 36.

The seventh factor concerns "the availability of compulsory process to compel attendance of non-party witnesses." Under Rule 45(c)(1), "[a] subpoena may command a person to attend a trial, hearing, or deposition only as follows: (A) within 100 miles of where the person resides, is employed, or regularly transacts business in person; or (B) within the state where the person resides, is employed, or regularly transacts business in person, if the person (i) is a party or a party's officer; or (ii) is commanded to attend a trial and would not incur substantial expense." However, "[a] court's subpoena power is only relevant if non-party witnesses within the state will likely refuse to testify." *Stanbury Elec. Engineering, LLC v. Energy Prods., Inc.*, No. C16-0362JLR, 2016 WL 3255003 at *7 (W.D. Wash. June 13, 2006) (internal citation omitted). Neither side has identified potential witnesses who might refuse to testify. This factor is therefore neutral. The Court notes that the same issues facing California witnesses if the case were handled in the Eastern District of Washington would be equally true of Washington residents if the case were handled in the Central District of California.

The first public interest factor, the congestion of the potential forum to which the matter may be transferred, weighs in favor of retention of this case. "[t]he real issue is not whether a dismissal will reduce a court's congestion but whether a trial may be speedier in another court because of its less crowded docket." *Gates Learjet Corp.*, 743 F.2d at 1337. Plaintiffs argue, and Defendants do not rebut, that the Central District of California is a heavily congested district. ECF No. 9 at 21. The second public interest factor, the local interest in resolving this dispute, weighs neutrally. Both California and Washington have an interest in enforcing and protecting parties to a contract and business expectations. And the final public interest factor slightly favors Washington. Though Plaintiffs bring these claims pursuant to Washington law, they are not asserting any claims under Washington State statutory law, and a federal court in California would be perfectly equipped to resolve issues of contract disputes and tort law.

Four factors supporting the interest of justice favor Washington as a forum, three factors favor California, and the remaining weighing neutrally, the Court elects to retain this matter. This is due in great part to the principle that a plaintiff's choice of forum should be respected, absent an overwhelming showing of inconvenience from the defendant. *Decker Coal*, 805 F.2d at 843. Given that multiple factors weigh neutrally, the Court finds that retention of the case furthers the interest of justice factor.

ORDER DENYING DEFENDANTS' MOTION TO DISMISS OR TRANSFER VENUE ~ 19

**ACCORDINGLY, IT IS HEREBY ORDERED:**

Defendants' Motion to Dismiss or Transfer Venue (ECF No. 5) is **DENIED**.

The District Court Executive is directed to enter this Order and furnish copies to counsel.

DATED May 27, 2025.

THOMAS O. RICE
United States District Judge